UNITED STATES FIDELITY & GUARANTY COMPANY,
Appellant, vs. PULLEN, Respondent.

*December 8, 1938—January 10, 1939.*

The cause was submitted for the appellant on the briefs of *Lines, Spooner & Quarles,* attorneys, and *Maxwell H. Herriott* of counsel, all of Milwaukee, and for the respondent on the brief of *Wood, Warner & Tyrrell* of Milwaukee.

FRITZ, J.  The appeal herein is from an order sustaining a demurrer to an amended complaint on the ground that the facts alleged are insufficient to constitute a cause of action. Liberally construed the allegations of the complaint, including facts stated in exhibits attached thereto, are to the following effect, in so far as here material.  The surety bond, by reason of which the plaintiff sustained the damages which it seeks to recover, was furnished by the plaintiff as surety for the defendant, as principal, when he qualified on December 8, 1917, as the testamentary trustee of a trust under the will of Mary S. Potter, deceased.  Upon receiving assets of the trust estate from the executor, the defendant executed a

receipt for $14,473.95 as the distributive share of the beneficiary of the trust under the will. However, instead of actually receiving that sum in money, the defendant accepted certain securities at their face value, including a note for $5,000 executed by Charles A. Cushman, and secured by a purchase-money mortgage on a farm, which he bought for $6,000, of which he paid but $1,000 in cash. That security was not eligible for the investment of trust funds under sec. 231.32 (1), Stats. (see margin[1]), and it was not paid upon maturity in 1920. Moreover, when Cushman died, the defendant failed to file a claim against his estate, and the right to recover thereon had become barred when the defendant on May 24, 1926, offered to turn the Cushman and other securities over to the Rock County Savings & Trust Company, which was appointed to succeed him as trustee. The successor trustee refused to receive the securities excepting for investigation with a stipulation that there was no responsibility on its part until it found them to be legal as trust investments, and that they could be returned to the defendant if not satisfactory. Upon finding that they were not eligible for the investment of trust funds, the successor trustee brought an action in September, 1926, against the plaintiff and the defendant herein, as surety and principal, respectively, to recover the amount invested in the Cushman loan, and also other securities. Thereupon, it was stipulated between the plaintiff and the defendant herein and the successor trustee, in relation to the Cushman security, that the successor trustee should take charge thereof to liquidate it for the benefit of the parties entitled thereto; should give the plaintiff and the defendant herein timely notice of all trials, foreclosures, sales, and other legal proceedings relating thereto, which might establish any deficiency liability on their part; and should hold the proceeds

[1] Formerly sec. 2100*b*, Stats. (1923 and prior); now sec. 320.01, Stats. (1935 and after).

realized upon liquidation subject to the determination of the ultimate responsibility for payment thereof as between the parties herein and the trust estate. Subsequently, the same parties stipulated on September 6, 1928, that on a sale under a foreclosure judgment obtained by the successor trustee on the Cushman mortgage, it should buy in the farm at $5,000 if no more was bid; and that if it acquired the farm, it should hold, manage, and endeavor to sell the property; and that its acts in those respects should be without prejudice to, or the waiver of, the rights or defenses of any party. Pursuant to the stipulation the successor trustee acquired the farm on September 14, 1928, and held it seven years without being able to sell it or secure sufficient income to meet the carrying charges. In 1933, counsel for the successor trustee indicated a willingness to submit to the latter an offer of $3,500 for release of the parties herein, but defendant's counsel refused to approve the making of such offer or any offer, or to make any contribution to a settlement. In 1935 the successor trustee notified the plaintiff herein that unless the liability to the trust estate was adjusted, it would take judgment in the action above mentioned, commenced in September, 1926, and in that connection the successor trustee offered to settle the action upon the payment of $3,500 and the release by the defendant of any claim against the Cushman farm, or the payment of $4,000 and the deeding of the Cushman farm to the plaintiff or its nominee. Upon being notified of that demand, defendant's counsel advised the plaintiff's representative that he would advise his client to deny liability and not contribute to any offer in settlement. Thereupon the plaintiff herein elected to pay and paid $4,000 on July 24, 1936, to the successor trustee for a deed to the farm, upon which it finally succeeded in realizing $500 on a sale, and consequently sustained a loss of $3,500. That amount the plaintiff seeks to recover herein with interest from July 24, 1936, and also

$325, which it paid for legal expenses in the action brought against the parties herein by the successor trustee, and which it alleges the defendant agreed in its application for the bond to pay in the event of suit upon the bond. The plaintiff also alleged in its amended complaint that the Cushman mortgage was never a proper investment for trust funds under the statutes of 1915 or any year thereafter because the value of the mortgaged premises was less at all times than twice the amount of the loan secured thereby; that the defendant was negligent in accepting the mortgage as a trust-fund investment in the first instance, and in permitting the personal liability of the mortgagor, his heirs, and assigns, to become barred by failing to file a claim against Cushman's estate upon his decease, and in failing to foreclose the mortgage upon the property from which alone there could be any recovery on the amount due the trust; and that as a result of such negligence the trust estate sustained damages in excess of $8,000, for payment of which neither the plaintiff nor the defendant herein had any legal defense.

The trial court concluded, in passing upon the demurrer to the amended complaint, that because no appeal was taken from the order sustaining a demurrer to the original complaint, the court's ruling in sustaining the latter demurrer constituted the law of the case excepting in so far as the amendment supplied allegations which were lacking in the original complaint, and which are necessary to set forth a cause of action. That conclusion was erroneous. The practice is well settled that "an order of the trial court sustaining a demurrer to a pleading is not *res adjudicata* upon the same questions raised upon a second demurrer." *Rogers v. John Week Lumber Co.* 117 Wis. 5, 8, 93 N. W. 821; *Schoenleber v. Burkhardt,* 94 Wis. 575, 69 N. W. 343; *Watson v. Appleton,* 62 Wis. 267, 22 N. W. 475; *Hackett v. Carter,* 38 Wis. 394.

In passing upon the allegations in the amended complaint that Cushman purchased the farm in 1915 for $6,000 and gave the mortgage in question to secure $5,000, and that the "mortgage was at no time a proper investment for trust funds under the Wisconsin statutes of 1915 or any year thereafter because the value of said land and premises so mortgaged at all times was less than twice the amount of the loan secured thereby," the court said, "this particular allegation contains only the pleader's conclusion of law as to the legal effect of the account and on demurrer is improper pleading." That might have been correct if the amended allegation had been merely that the mortgage was at no time a proper investment of trust funds under the statutes. But as it was alleged in that connection that the purchase price for the farm was $6,000 and the mortgage was to secure the payment of $5,000 thereof, and that the value of the premises so mortgaged was at all times less than twice the amount of the loan secured thereby, the accompanying allegation that the mortgage was at no time "a proper investment for trust funds" under the statutes is a mixed statement of fact and conclusion of law, and as such should not be disregarded on a demurrer as improper pleading.

The court's principal grounds for holding that no cause of action is stated in the amended complaint were (1) that because the defendant did not make the original investment in the Cushman mortgage, and it was turned over to him by the executor, the defendant is not responsible for the consequences of the investment's failing to conform to the statutory requirements in the first instance; and (2) that there is no allegation (a) that the mortgage security depreciated in value during defendant's trusteeship, or (b) that any loss was sustained by the trust estate by reason of any lack of diligence on his part in enforcing payment of the mortgage loan. In arriving at those conclusions the court relied upon

the rulings in *Guardianship of Farness,* 225 Wis. 383, 273 N. W. 522, and *Estate of George,* 225 Wis. 251, 270 N. W. 538, 274 N. W. 294, to the effect that the mere fact that a fiduciary failed to convert securities into cash and to invest the proceeds in securities specified in sec. 231.32, Stats., does not render him liable for damages in the absence of proof that the trust estate sustained some loss during the period of the fiduciary's administration. The effect and scope of the rulings is evidenced by the following statement in *Estate of George, supra,* p. 256, —

"Humphrey held the securities for nearly a year after the widow's death before resigning, but up to this time there had been no depreciation of the securities. They were of value when he received them as trustee as set forth in the inventory of the estate, and were of the same value when he turned them over to Wendt. As the estate was not damaged by Humphrey's failure to convert the securities and invest the proceeds as required by statute, Humphrey and his bondsmen, who were also parties to the petition for accounting, were discharged from liability and properly so."

Thus it is evident that the conclusion that the fiduciary was held not liable, although he had accepted and held securities ineligible for the investment of trust funds, was reached because the facts proven did not warrant finding that a loss was sustained by the trust estate during his administration thereof. However, it will be noted that in the *Estate of George, supra,* the trustee Wendt,—who succeeded the exonerated trustee Humphrey in the administration of the estate, and to whom Humphrey turned over securities in which neither of the trustees had made the original investment,— was held liable for the loss by reason of their diminution in value during Wendt's administration.

That such a loss was sustained during the defendant's trusteeship in the case at bar, is sufficiently shown by the allegations in the amended complaint, which are to the effect here-

inbefore stated. In view of those matters it appears at least *prima facie* from the complaint as amended that by reason of the defendant's acceptance of the Cushman note and mortgage as equivalent to $5,000 in money, and his failure to convert that security into money, or otherwise realize thereon, the trust estate sustained a substantial loss during his trusteeship; that he and the plaintiff, as his surety, were liable to the estate in the action brought by the successor trustee to recover that loss; and that the plaintiff, in paying a liability common to itself and the defendant when confronted therewith, and with the action to recover thereon, which it apparently could not legally defeat, was not obliged to forego a reasonable opportunity for a favorable compromise in order to avoid being considered such an interloper or volunteer as to relieve defendant from his obligation to reimburse the plaintiff as his surety. Under such circumstances there is applicable the rule that—

"One confronted with an obligation that he cannot legally resist is not obliged to wait to be sued and to lose a reasonable opportunity for a favorable compromise in order to avoid assuming the character of an interloper or volunteer in the matter of paying a liability common to him and another. *Western Casualty & S. Co. v. Milwaukee G. C. Co.* 213 Wis. 302, 306, 251 N. W. 491; 13 C. J. p. 823, § 6; 6 R. C. L. p. 1045." *United States F. & G. Co. v. Hooper,* 219 Wis. 373, 380, 263 N. W. 184.

The *prima facie* showing as to liability of the defendant to the plaintiff under the allegations of the amended complaint is sufficient to constitute a cause of action until the effect or consequences thereof are avoided or defeated by a showing that there was no such loss to the trust estate; or that the defendant or the plaintiff, as his surety, was not liable therefor; or that the latter's right to reimbursement by the defendant is defeated by some want of notice to the defendant, or by bad faith on the surety's part in settling with the successor

trustee, or in reselling and realizing on the farm accepted on that settlement, or by some other effective defense. The receipt given by the defendant to the executor under date of March 16, 1918, may, of course, be subject to explanation or contradiction by parol or other competent evidence. *Illinois Steel Co. v. Paczocha*, 139 Wis. 23, 119 N. W. 550; *Lefebvre v. Autoist Mut. Ins. Co.* 205 Wis. 115, 236 N. W. 684; *Nimz v. Fullerton Lumber Co.* 211 Wis. 36, 247 N. W. 338.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order overruling the demurrer.